CADES SCHUTTE
A Limited Liability Law Partnership

| | |
|---|---|
| CALVERT G. CHIPCHASE | 7757-0 |
| LISA K. SWARTZFAGER | 10867-0 |
| MICHAEL L. HOKE | 11324-0 |
| MALLORY T. MARTIN | 10211-0 |

Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4212
Telephone: (808) 521-9200
Email: cchipchase@cades.com
lswartzfager@cades.com
mhoke@cades.com
mmartin@cades.com

Attorneys for Defendant
CP IV WATERFRONT, LLC d/b/a
KAPILINA BEACH HOMES

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| XAVIER BONILLA LOZANO, TAELER OWENS, and CHELSEA CAMPBELL, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CP IV WATERFRONT, LLC d/b/a KAPILINA BEACH HOMES, and DOE Defendants 1-20,<br><br>　　　　　Defendants. | CIVIL NO.<br><br>**DEFENDANT CP IV WATERFRONT, LLC d/b/a KAPILINA BEACH HOMES' NOTICE OF REMOVAL**<br><br>**DECLARATION OF KATHY MARA**<br><br>**DECLARATION OF LISA K. SWARTZFAGER**<br><br>**EXHIBITS 1 - 5**<br><br>**CERTIFICATE OF SERVICE** |

# DEFENDANT CP IV WATERFRONT, LLC d/b/a KAPILINA BEACH HOMES' NOTICE OF REMOVAL

Defendant CP IV WATERFRONT, LLC d/b/a KAPILINA BEACH HOMES ("**Kapilina**") gives notice of removal of this action from the Circuit Court of the First Circuit, State of Hawaiʻi, to the United States District Court for the District of Hawaiʻi ("**Notice of Removal**") pursuant to 28 U.S.C. §§ 1332, 1442, and 1446, with reservation of all defenses and rights. As set forth below, this case is properly removed to this Court pursuant to the Class Action Fairness Act ("**CAFA**"), 28 U.S.C. § 1332(d) and, independently, pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442. In support of its Notice of Removal, Kapilina states the following:

## I. STATE COURT ACTION

Plaintiffs XAVIER BONILLA LOZANO, TAELER OWENS, and CHELSEA CAMPBELL, individually and on behalf of all others similarly situated persons (collectively, "**Plaintiffs**") filed a complaint in the Circuit Court of the First Circuit, State of Hawaiʻi, against Kapilina on January 6, 2022. *See* Ex. 1. The state court case is designated as Civil No. 1CCV-22-0000019.

Kapilina is the landlord of a residential community at Iroquois Point in West Oahu known as Kapilina Beach Homes. *See* Mara Decl. ¶ 2. In their complaint, Plaintiffs assert claims on behalf of all persons who reside or have resided in a housing unit that is entitled to receive potable water sold or distributed by Kapilina. Compl. ¶ 12. Plaintiffs also assert claims on behalf of a subclass of all persons who entered a lease contract with Kapilina and paid lease rent on housing entitled to receive potable water sold or distributed by Kapilina. *Id.* ¶ 13. Plaintiffs allege that they have been "constructively evicted from their homes, had personal property contaminated and ruined, and/or suffered physical harm due to contaminated water caused by fuel spills and/or leaks attributable to the Red Hill Bulk Fuel Storage (hereinafter, "**Red Hill Facility**"), . . . which is owned and operated by the U.S. Department of Navy [(the "**Navy**")]." *Id.* ¶ 4.

Plaintiffs assert nine causes of action, including for negligence, strict liability, medical monitoring, private nuisance, unfair and deceptive trade practices, breach of implied warranty of habitability, trespass, breach of contract, and violation of Hawai`i Revised Statutes ("**HRS**") Chapter 521. *Id.* ¶¶ 48-113. Plaintiffs seek general, special,

2

treble, consequential, and punitive damages in an amount to be determined at trial, provision of medical monitoring program, reasonable attorneys' fees and costs, disgorgement of profits, and any prejudgment interest provided by statute. *Id.* at p. 31. Plaintiffs also seek preliminary and permanent injunctive relief requiring Kapilina to, among other things, remove all water contamination from the residential units and common areas, warn tenants of the existence of water contamination in units, remedy any problems that purportedly render the units uninhabitable, and enjoin Kapilina from collecting rent from existing tenants while any water remains contaminated. *Id.* at pp. 31-32.

## II.   RECEIPT OF PLAINTIFFS' INITIAL PLEADINGS BY KAPILINA

Kapilina was served with a copy of Plaintiffs' complaint on January 13, 2022. *See* Ex. 2 (return of service).

## III.   THE COURT HAS JURISDICTION OVER THIS CASE PURSUANT TO THE CLASS ACTION FAIRNESS ACT

CAFA extends federal diversity jurisdiction to class actions if the aggregate amount in controversy exceeds $5,000,000, there are at least 100 members of the proposed plaintiff class, and any member of the proposed class of plaintiffs is a citizen of a state different from any defendant. *See* 28 U.S.C. § 1332(d)(1)(B), (d)(2), (d)(5)(B), (d)(6). Each of

3

these requirements is met here, and the requirements are discussed in turn below.

### A. This Case Is a Class Action.

First, this matter is a class action within the meaning of CAFA. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

Plaintiffs seek to bring this case as a class action under Hawaiʻi Rule of Civil Procedure 23—Hawaiʻi's analog to Rule 23 of the Federal Rules of Civil Procedure, which authorizes a representative party to bring suit on behalf of a class. *Compare* Haw. R. Civ. P. 23 *with* Fed. R. Civ. P. 23; *see* Compl. ¶¶ 11-20.

Accordingly, this case qualifies as a class action under CAFA.

### B. The Amount in Controversy Exceeds $5,000,000.

Second, the aggregate amount in controversy is met. For a case to be removable under CAFA, the aggregate amount in controversy must exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (d)(6). The amount in controversy is calculated by aggregating the claims of the individual class members. 28 U.S.C. § 1332(d)(6). Additionally,

attorneys' fees and punitive damages are included in the amount in controversy. *California Spine & Neurosurgery Inst. v. Health Care Serv. Corp.*, No. CV1904506DSFSKX, 2019 WL 3219136, at *2 (C.D. Cal. July 16, 2019).

If the complaint does not allege a specific amount in controversy, the party seeking federal jurisdiction must establish the amount in controversy by a preponderance of the evidence. *Lewis* v. *Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "Defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014) (citation omitted).

Here, the $5,000,000 threshold under CAFA is met. Plaintiffs allege claims on behalf of all tenants and occupants of Kapilina. They allege members of the proposed class "have sustained damages as a result of Defendants' negligence, which include but are not limited to overpayment for rent, real estate sales commissions, renter's insurance policies, personal injuries not requiring medical intervention, damage to

5

personal property, and property management and maintenance services." Compl. ¶ 53.

The amount in controversy requirement is met on these allegations alone. There are 1,459 residential units at Kapilina Beach Homes. Mara Decl. ¶ 3. There were approximately 4,365 residents at Kapilina Beach Homes during November 2021 and approximately 4,307 residents during December 2021. *Id.* ¶ 4. Monthly rent ranges from $2,887 to $6,100. *Id.* ¶ 6. Thus, using a conservative estimate of 4,000 potential members of the proposed plaintiff class, the $5,000,000 threshold will be met if each member of the proposed class has $1,250 in alleged damages at issue— less than half the amount of the lowest rent payment for one month.

In addition to these sums, Plaintiffs request an award of attorneys' fees and costs incurred in this litigation in amounts to be proven at trial. Compl. ¶ 54. Plaintiffs also assert a claim for unfair and deceptive trade practices under HRS Chapter 480 and seek treble damages. *Id.* ¶¶ 72-87, at p. 31. Plaintiffs also seek punitive and special damages in an amount to be proven at trial. *Id.* ¶¶ 114-119, at p. 31. Plaintiffs further seek prejudgment interest, disgorgement of profits, provision of medical

monitoring program, injunctive relief, and punitive damages. *Id*. at pp. 31-32.

Accordingly, in aggregate, there is far more than $1,250 at issue for each proposed class member premised on a conservative proposed class of 4,000. Therefore, the aggregate amount in controversy exceeds $5,000,000.[1]

## C. There Are at Least 100 Members of the Proposed Class.

CAFA confers jurisdiction over class actions with at least 100 proposed class members. 28 U.S.C. § 1332(d)(5)(B). Here, under the section entitled "Class Action Allegations," Plaintiffs assert "[t]he Class consists of over 1,000 persons who reside or have resided in a housing unit entitled to receive potable water sold or distributed by Defendants." Compl. ¶ 14.

Accordingly, there are at least 100 proposed class members.

---

[1] The amount in controversy represents only what Plaintiffs request at this stage in the proceeding. This is not an admission that Plaintiffs are entitled to recover this amount. *See Lewis*, 627 F.3d at 400 ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. To establish the jurisdictional amount, [the defendant] need not concede liability for the entire amount[.]" (citations omitted)).

7

## D.  At Least One Proposed Class Member Has Different Citizenship than Kapilina.

Under CAFA, class actions need only have minimal diversity between the parties as opposed to complete diversity. *See* 28 U.S.C. § 1332(d)(2)(A). Thus, a case satisfies CAFA's diversity requirement as long at least one plaintiff's citizenship differs from that of at least one defendant. *Id.* Here, minimal diversity is satisfied under CAFA because Kapilina is a citizen of Hawai`i and one or more members of the proposed class have citizenship in states other than Hawai`i.

***Citizenship of Kapilina.*** For purposes of minimal diversity under CAFA, 28 U.S.C. § 1332(d)(10) provides that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." The majority of courts that have considered this issue have held that LLCs are "unincorporated associations" under CAFA. *See Jack v. Ring LLC*, No. 21-CV-00544-HSG, 2021 WL 3510291, at *2–3 (N.D. Cal. Aug. 10, 2021) (citing cases).

Kapilina is incorporated under the laws of Hawai`i and its principal place of business is Hawai`i. Mara Decl. ¶ 7. Therefore, Kapilina is a

8

citizen of Hawai`i for CAFA purposes. *See Jack*, 2021 WL 3510291, at *2–3.

***Citizenship of Proposed Class Members.*** If a natural person (as in the proposed class members here) is a citizen of the United States, the natural person's citizenship is determined by her state of domicile. *Adams v. W. Marine Products, Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020). "One's domicile is her 'permanent home'—that is, where (i) she resides, (ii) with the intention to remain or to which she intends to return." *Id.* (internal quotations omitted). A person's residence constitutes "*some* evidence of domicile," but is not dispositive. *Id.*

Members of the proposed class are not citizens of Hawai`i and have presented themselves as having permanent homes in states other than Hawai`i. Mara Decl. ¶ 8. Therefore, the requisite minimal diversity is satisfied.

Many tenants at Kapilina Beach Homes are members of the United States military. Mara Decl. ¶ 9. For purposes of a diversity analysis, "there is a presumption that an individual retains his or her domicile upon entry into the military and assignment to another state." *In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F.Supp.2d 717, 725

9

(S.D.N.Y. 2003); *see also Melendez-Garcia v. Sanchez*, 629 F.3d 25, 41 (1st Cir. 2010) ("Service personnel are presumed not to acquire a new domicile when they are stationed in a place pursuant to orders; they retain the domicile they had at the time of entry into the services.") (quoting 13E Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3617, at 607 (3d ed. 2009)). The presumption also applies to the families of military members. *See In re Ski Train Fire*, 257 F.Supp.2d at 726 (common sense, consistency and fairness require presumption that military members domicile does not change when he or she is stationed in a different state applies to military spouses who accompany their husbands or wives on a tour of duty).

Kapilina's records show that many of the military members moved to Kapilina Beach Homes from a state other than Hawai`i, including Alaska, Arkansas, Kentucky, Washington, Oregon, Texas, California, Mississippi, Oklahoma, Tennessee, Florida, Nevada, Utah, Wyoming, Louisiana, Kansas, Missouri, Illinois, Minnesota, Michigan, Indiana, Ohio, Alabama, Georgia, South Carolina, North Carolina, Virginia, Maryland, Delaware, Pennsylvania, New York, and Colorado. Mara Decl. ¶ 10. These records include rental applications. *Id.*

Accordingly, there is minimal diversity between the proposed class members and Kapilina.

## IV. THE COURT HAS JURISDICTION OVER THIS CASE PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE

Removal is independently authorized under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1) ("**Section 1442**"), because Kapilina's challenged conduct—leasing and managing its residential units—is performed pursuant to agreements with the Navy.

28 U.S.C. § 1442(a)(1) provides for removal of an action against "any officer (**or any person acting under that officer**) of the United States or of any agency thereof . . . **for or relating to any act** under color of such office." (Emphasis added). The Supreme Court has held that the words "acting under" are broad and that the Federal Officer Removal Statute must be "liberally construed." *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007). "[T]he **right of removal is absolute** for conduct performed under color of federal office." *Shiraishi v. Kubo*, No. CV. 11-00225 DAE-BMK, 2011 WL 2532498, at *2 (D. Haw. June 23, 2011) (citation omitted)) (emphasis added).

A party seeking removal under Section 1442 need only show that "(a) it is a 'person' within the meaning of the statute, (b) there is a causal

11

nexus between plaintiffs' claims and its actions, taken pursuant to a federal officer's direction, and (c) it can assert a 'colorable federal defense.'" *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017). Kapilina satisfies all three elements.

### A. Kapilina Is a Person within the Meaning of Section 1442.

Limited liability companies are considered "persons" for purposes of Section 1442. *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F.Supp.2d 524, 530 (E.D. La. 2011) (collecting cases allowing limited liability companies to remove under Section 1442). Kapilina is a limited liability company and, thus, qualifies as a person under Section 1442. *See id.*

### B. There Is a Causal Nexus Between Plaintiffs' Claims and Kapilina's Actions Taken Pursuant to the Navy's Direction.

Kapilina satisfies the second element for federal officer removal because it performed the challenged conduct—leasing and managing its residential units —while acting under the direction of the Navy.

The Ninth Circuit has explained that "the hurdle erected by the causal-connection requirement is quite low" and has described this prong as having a "low bar." *Goncalves*, 865 F.3d at 1245 (internal brackets

removed). "For a private entity to be acting under a federal officer, the private entity must be involved in an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* (internal quotations and emphasis removed). In this case, Plaintiffs allege that Kapilina "**manage[s] and lease[s] residential housing in Honolulu, Hawaii, pursuant to agreements with the Navy**." Compl. ¶ 32 (emphasis added). Plaintiffs also allege the following regarding the Navy and the Red Hill Facility:

  a. "**Defendants and the Navy entered into a public-private venture to make productive use of residential housing previously utilized as a military housing community**. Under the public private venture, **federal lands are leased to Defendants** who then lease residences to private consumers, including the Plaintiffs. **The public-private venture also includes the sourcing of potable water sources from a Navy-operated water system to Defendants' control**." *Id.* ¶ 33 (emphasis added).

  b. "The Red Hill Facility was constructed by the Navy . . . ." *Id.* ¶ 21.

  c. "The Red Hill Facility storage tanks are designed to store marine diesel and two types of jet fuel (JP-5 and F-24). Fuel stored at the Red Hill Facility is ultimately transported for primary use in Pacific defense operations via three pipelines connecting the tanks to a pumphouse and terminal endpoint." *Id.* ¶ 23.

  d. "In 2015, the Navy, [the Hawaii Department of Health] and other parties entered into an administrative order of consent requiring the Navy to conduct investigations into fuel releases from the Red Hill Facility. It also contained a remediation plan

13

> that address inspection, repair and maintenance of the Red Hill Facility fuel tanks, detection and remediation of tank releases, groundwater protection and risk assessment." *Id.* ¶ 26

Accordingly, the allegations in Plaintiffs' complaint establish that the Navy leases land to Kapilina, that the Navy constructed and exercised control over the Red Hill Facility and the water system at issue, and that Kapilina's actions related to leasing and managing of its residential units were done pursuant to agreements with the Navy as part of a public-private venture. Additionally, all claims in Plaintiffs' complaint are based on the water contamination from the Red Hill Facility, which Plaintiffs assert is maintained and controlled by the Navy. Accordingly, the requisite nexus between Plaintiffs' claims and their allegations regarding Kapilina's actions taken while acting under the direction of the Navy exists. *See Goncalves,* 865 F.3d at 1245–49.

### C. <u>Kapilina Has a Colorable Federal Defense.</u>

To establish a colorable federal defense, "a defendant need not assert a clearly sustainable defense, nor does it need to win [its] case before [it] can have it removed." *Leite v. Crane Co.*, 868 F. Supp. 2d 1023, 1027–28 (D. Haw. 2012), *aff'd,* 749 F.3d 1117 (9th Cir. 2014) (quotations omitted). "Rather, where a defendant seeks removal pursuant to the federal officer removal statute, 'no determination of fact is required but

14

it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith.'" *Id.* (quoting *Colorado v. Symes,* 286 U.S. 510, 519 (1932)). For purposes of determining whether a defense is colorable, the facts are viewed in the light most favorable to the defendant. *Id.* at 1030-31.

Kapilina has a colorable federal defense, namely, the "government contract defense," which generally "protects government contractors from tort liability that arises as a result of the contractor's compliance with the specifications of a federal government contract." *Coury v. Air & Liquid Sys. Corp.*, No. 3:17-1240-SI, 2018 WL 702685, at *8 (D. Or. Feb. 2, 2018). Here, Kapilina is entitled to derivative sovereign immunity and the government contractor defense pursuant to its contract with the Navy and allegations of the Navy's control over the water system at issue. Indeed, the claims in the complaint are related to contaminated water from the Red Hill Facility. *See supra*, at 13-14. As alleged in the complaint, the Red Hill Facility is under the control of the Navy and allegedly provided water through Kapilina as part of a "public-private" venture with the Navy. *See* Compl. ¶¶ 4, 21, 23, 26, 32, 33.

Accordingly, removal is proper pursuant to the Federal Officer Removal Statute.

## V. TIMELINESS OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(b), this removal is timely because thirty days have not elapsed since January 13, 2022—the date on which Kapilina was served with the complaint. *See Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-54 (1999) (thirty-day removal period begins to run when defendant is formally served).

## VI. STATE COURT PLEADINGS

As 28 U.S.C. § 1446(a) requires, Kapilina attaches hereto the process, pleadings, and orders served on Kapilina in this case.

## VII. NOTICE TO STATE COURT AND PLAINTIFFS

Pursuant to 28 U.S.C. § 1446(d), Kapilina is providing written notice to Plaintiffs and shall file a true and correct copy of this Notice of Removal with the Clerk of the Circuit Court.

In filing this Notice of Removal, Kapilina does not waive any defense, exception, right, or motion. Kapilina specifically reserve all defenses, exceptions, rights, and motions. No statement or omission here shall be deemed to constitute an admission by Kapilina of any of the allegations or damages sought in the complaint.

WHEREFORE, Kapilina removes this action from the Hawaiʻi Circuit Court of the First Circuit to the United States District Court for the District of Hawaiʻi.

DATED: Honolulu, Hawaiʻi, February 2, 2022.

    CADES SCHUTTE
    A Limited Liability Law Partnership

    */s/ Calvert G. Chipchase*
    CALVERT G. CHIPCHASE
    LISA K. SWARTZFAGER
    MICHAEL L. HOKE
    MALLORY T. MARTIN
    Attorneys for Defendant
    CP IV WATERFRONT, LLC d/b/a
    KAPILINA BEACH HOMES